**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| SHAWN L. WOOD | |
| Appellee | No. 670 EDA 2015 |

Appeal from the Order February 5, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009244-2014

BEFORE:  OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                                     **FILED MAY 03, 2016**

This is a Commonwealth appeal from the order[1] entered February 5, 2015, in the Philadelphia County Court of Common Pleas, granting appellee, Shawn L. Wood's, motion to suppress the evidence recovered during a traffic stop.  The Commonwealth argues the trial court erred in determining the investigating officers were not authorized to remove Wood from his vehicle and conduct a pat-down search for weapons during the stop. For the reasons set forth below, we remand for additional findings of fact, and a supplemental opinion.

---

[1] The Commonwealth properly certified, in its notice of appeal, that "this order terminates or substantially handicaps the prosecution of this case," a prerequisite to this Court's jurisdiction pursuant to Pa.R.A.P. 311(d).  Notice of Appeal, 3/9/2015.

The facts underlying Wood's arrest are summarized by the trial court

as follows:

> The evidence established that on July 13, 2014, at approximately 8:45 p.m., Officer Kyle Smith and his partner were on duty in the area of the 2000 block of 60th Street in Philadelphia. Officer Smith testified that at that time and place he spotted a 2004 white Chevy Silverado traveling north in the southbound lane. Officer Smith's partner signaled the driver to let him know he was on the wrong side of the road by flashing his lights once. The driver did not correct his lane of travel so Officer Smith's partner activated the overhead lights and pulled the vehicle over for the sole reason of driving on the wrong side of the road.
>
> Officer Smith and his partner exited the police cruiser and approached [Wood's] vehicle. As he got closer to the vehicle, Officer Smith stated that he could see [Wood], who "seemed nervous – seemed very nervous." Officer Smith stated that he was nervous approaching the truck because they were in a "high crime area, lots of robberies"; that he had made numerous drug arrests and firearm arrests just blocks away from where they had stopped [Wood]. Officer Smith stated that because of these reasons he pulled [Wood] out of his vehicle and frisked him. [The officer also testified that Wood seemed "very nervous," his breathing "didn't appear normal," and his knees were clenched as if he was "trying to conceal something."[2]] No contraband was recovered. Officer Smith then asked [Wood] if there was anything in the vehicle he should be aware of. [Wood] told him that he had a gun in the glove box which Officer Smith recovered without incident. There was no testimony whether or not the two other occupants were removed from the vehicle and frisked. Officer Smith described the area as a "high crime area" however no further evidence supporting the notion that this area was generally associated with a high degree of crime was offered.
>
> Jodi-Lyn Lowry testified for the defense. According to Ms. Lowry, [Wood] is her boyfriend and on July 13, 2014, they were

---

[2] N.T., 2/5/2015, at 6, 9.

- 2 -

headed northbound, attempting to make a left-hand turn down a one-way street. A police car was headed southbound so they stopped to allow the officers to go by before [] Wood made the turn because she stated two cars could not fit.[3] The police flashed their lights once. Thinking they were being giv[en] the right-[of]-way, [Wood] started to make the turn when the police flashed their lights completely.

_____

[3] Ms. Lowry described [Wood's] truck as "pretty big" with solid work tool containers on each side which made the truck bigger than a normal truck.

_____

[Wood] testified that his work truck is bigger than usual; that it is like driving a U-haul. He stated that he was driving from his friend's house near 60th Street to go to the store. When he got near where he needed to make a left turn to park, he pulled over a little bit to let a car go by. He saw the police car behind the car he had just let go by and waved at the police car to go before he made his turn; the police car flashed their lights at him once. Thinking he was being given the right-[of]-way, he went to turn and was about half-way through the turn when the police put the lights on completely. He immediately stopped and turned his vehicle off. According to [Wood], when the officer asked for his license and registration he told the officer there was a firearm in the glove box and that it was taken apart. The officer then took everyone out of the vehicle, recovered the weapon and proceeded to search the entire truck, including each individual tool container. [Wood] was subsequently arrested.

Trial Court Opinion, 6/16/2015, at 1-3 (record citations omitted).

Wood was charged with two violations of the Uniform Firearms Act,[3] namely, firearms not to be carried without a license, and carrying firearms

_____

[3] 18 Pa.C.S. § 6101 *et seq.*

on public streets or public property in Philadelphia.[4]  On February 5, 2015, Wood filed a pre-trial suppression motion, arguing the traffic stop was unlawful because the police did not have reasonable suspicion or probable cause to believe he was engaged in criminal activity.  *See* Motion to Suppress Evidence, 2/5/2015, at ¶ 12.  The trial court conducted a suppression hearing on February 15, 2015.  At the conclusion of the hearing, the court entered an order granting Wood's motion to suppress.  This Commonwealth appeal followed.[5]

The Commonwealth frames its issue on appeal as follows:

Where officers in a high crime area with numerous gun and drug arrests properly stopped [Wood's] truck, which contained two other passengers, at night, for a traffic offense; [Wood] was breathing heavily and appeared very nervous; the officers removed [Wood] from the vehicle and asked if there was anything that they should be aware of, and he responded that there was a gun in the glove box; and police then found a gun in the glove box; did the lower court err in suppressing [Wood's] admission and the gun on the ground that the officers were not entitled to remove him from the vehicle?

Commonwealth's Brief at 4.

Our standard of review is well-established:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the

---

[4] *See* 18 Pa.C.S. §§ 6106(a)(1) and 6108, respectively.

[5] The Commonwealth filed a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) on March 9, 2015, the same day it filed its notice of appeal.

evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

**Commonwealth v. Loughnane**, 128 A.3d 806, 812-813 (Pa. Super. 2015) (quotation omitted).

In the present case, the trial court concluded it was not necessary to determine whether the initial traffic stop of Wood's vehicle was proper because the court found the officer had no authority to remove Wood from his vehicle during the stop. The court explained that the Commonwealth failed to provide "specific facts" to support a finding of "reasonable suspicion that criminal activity was afoot," and offered nothing more than Wood's "non-descriptive nervous behavior in a high crime area" to support its determination that Officer Smith had reasonable suspicion to search Wood's truck. Trial Court Opinion, 6/16/2015, at 6, 9.

However, it is well-settled that "an officer conducting **a valid traffic stop** may order the occupants of a vehicle to alight to assure his own safety." **Commonwealth v. Reppert**, 814 A.2d 1196, 1202 (Pa. Super. 2002) (*en banc*) (emphasis supplied and citations omitted). In **Pennsylvania v. Mimms**, 434 U.S. 106 (1977), the United States Supreme Court held the "additional intrusion" of ordering a **validly stopped** driver

out of his vehicle "can only be described as *de minimis*."[6]  *Id.* at 111 (emphasis supplied).

Moreover, the subsequent search of Wood's truck was not based on reasonable suspicion deduced from Wood's actions during the traffic stop. Rather, it was based on his own statement to Officer Smith that he had a gun in the glove compartment.  Indeed, Officer Smith testified that after he conducted the pat-down of Wood, he asked him "was there anything in the vehicle [the officer] should be aware of."  N.T., 2/5/2015, at 7.  Wood responded, "there was a gun in the glove box."[7]  *Id.*  This Court has held that a question posed to a driver during an investigatory traffic stop, inquiring whether "there were any weapons or anything else the officer should know about[,]" is not impermissibly coercive "simply because its subject was the existence of weapons or anything else of which the police had a legitimate reason to be aware."  ***Commonwealth v. Clinton***, 905

_____

[6] The ***Mimms*** Court explained:  "The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it."  *Id.* at 111.

[7] We note that Wilson, himself, admitted he told Officer Smith about the gun.  In fact, he testified he did so "as soon as [the officer] asked me for my license and registration," and **before** the officer "ordered everybody out of the car."  *Id.* at 32.  Therefore, based on Wilson's testimony, Officer Smith clearly had the authority to retrieve the gun from Wilson's glove compartment.

A.2d 1026 (Pa. Super. 2006).[8] Accordingly, the officer's question to Wood,

and subsequent search based on his answer, was permissible.[9]

_____

[8] It merits emphasis that, in **Clinton**, like here, the officers had no independent reason to suspect the driver had a weapon or drugs in his vehicle. **See Clinton**, **supra**, 905 A.2d at 1028-1029.

[9] Wilson's acknowledgement that he had a gun in his truck differentiates this case from our *en banc* decision in **Commonwealth v. Cartagena**, 63 A.3d 294 (Pa. Super. 2013) (*en banc*), *appeal denied*, 70 A.3d 808 (Pa. 2013), upon which the trial court relied.

In **Cartagena**, the officers stopped the defendant's vehicle because it had heavily tinted windows. **Id.** at 296. The defendant driver did not immediately respond to the officer's request to lower the window, but then did so and provided his driver's license. **Id.** When they asked for his registration and proof of insurance, the defendant "opened the center console, looked inside[,] '… looked stunned and then closed it.'" **Id.** (citation omitted). The officers also testified that the defendant looked "'extremely nervous.'" **Id.** (citation omitted). After the defendant provided the requested paperwork, one officer directed him to step out of the vehicle, searched him, while another officer conducted a cursory search of the driver's seat and center console of the vehicle. **Id.** at 296-297. During this search, the officer found a loaded gun. **Id.** at 297.

The suppression court granted the defendant's motion to suppress the gun found during the officers' warrantless search, and an *en banc* panel of this Court affirmed on appeal. The **Cartagena** Court found the only factors in support of a search that were supported by the record were: "(1) the stop occurred at night, (2) [the defendant's] windows were tinted, and (3) [the defendant] appeared to be nervous." **Id.** at 304. However, the *en banc* panel concluded that "the totality of the circumstances, taken together, fall short of a reasonable suspicion to conduct the search at issue in this case." **Id.**

Conversely, in the case *sub judice*, Officer White did not search Wilson's truck until **after** Wilson told him there was a gun in the glove compartment. That fact alone distinguishes the case before us from **Cartagena**.

Nevertheless, our determination of whether Officer Smith's actions violated Wood's Fourth Amendment rights is dependent upon the legality of the initial traffic stop. **See Reppert**, **supra**. As noted *supra*, the trial court never decided whether the initial traffic stop was proper. **See** N.T., 2/5/2015, at 49 ("I find that whether or not the officer had the right to stop the vehicle is not necessary for me to determine for this motion to suppress."). Moreover, our review of the transcript from the suppression hearing reveals a clear conflict in testimony on this issue. Although Officer Smith testified he observed Wood's truck "traveling northbound in the southbound lane … driving on the wrong side of the road[,]" Lowry testified that Wood's truck remained, at all times, in the proper lane of travel. N.T., 2/5/2015, at 13, 26-27.[10] "[O]ur standard of review is highly deferential

_____

[10] Lowry testified, under cross-examination, was as follows:

[Prosecutor:] So you ended up going in the wrong lane of traffic --

[Lowry:] No.

[Prosecutor:] -- to get down the right street?

[Lowry:] No.

[Prosecutor:] So you were always traveling the correct direction on the street?

[Lowry:] Yes.

* * * *

[Prosecutor:] Okay. But at no time were you traveling in the wrong lane of traffic?

*(Footnote Continued Next Page)*

with respect to the suppression court's factual findings and credibility determinations," which are within the sole province of the trial court. ***Commonwealth v. Shabezz***, 129 A.3d 529, 532 (Pa. Super. 2015) (quotation omitted). Accordingly, we remand this case to the trial court so that it may make these additional findings, and file a supplemental opinion within 30 days of the date of the filing of this Memorandum.

Case remanded for findings of fact and a supplemental opinion. Panel jurisdiction retained.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2016

*(Footnote Continued)* ─────────────

[Lowry:] No.
N.T., 2/5/2015, at 26-27.