**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CORY MITCHELL | |
| Appellant | No. 193 EDA 2016 |

Appeal from the Judgment of Sentence December 10, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000634-2013

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED SEPTEMBER 12, 2016**

Appellant Cory Mitchell appeals from the Judgment of Sentence entered on December 10, 2015, in the Court of Common Pleas of Montgomery County, which, sitting as finder of fact in a non-jury trial, found Appellant guilty of five DUI charges arising out of a single incident.[1] Appellant contends the suppression court erroneously determined officers had probable cause to arrest him.  Following a careful review, we affirm.

The trial court aptly has set forth the facts derived from the officers' suppression hearing testimony as follows:

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1), (c), (d)(1)(i), (d)(1)(iii), and (d)(3), respectively.

*Former Justice specially assigned to the Superior Court.

On July 20, 2012, Montgomery Township Patrol Officer Jake Beebe was involved in a motor vehicle accident with [Appellant]. Hatfield Township Police Department was contacted to conduct a nonpartisan investigation of the accident. Hatfield Township Patrol Officer Jefferey[2] Richardson conducted an investigation and determined that Officer Beebe was at fault for the accident.

Montgomery Township Patrol Officer David Dunlap, a 28 year veteran with the Police Department, also responded to the scene of the accident. Upon speaking with [Appellant], Officer Dunlap immediately noticed his slurred speech and the odor of alcohol on his breath. Officer Dunlap asked [Appellant] if he had been drinking. [Appellant] admitted that he previously consumed three beers and that he finished his last beer about forty-five minutes prior to the accident.

Next, Officer Dunlap requested that [Appellant] perform field sobriety tests. Officer Dunlap gave [Appellant] instructions on how to perform five different field sobriety tests. After each set of instructions, [Appellant] performed the test to the best of his ability. [Appellant] passed an alphabet test. [Appellant] failed a numerical countdown test by failing to following [sic] instructions. [Appellant] also failed a Horizontal Gaze Nystagmus test ("HGN"), a walk and turn test and a one leg stand test. Subsequently, Officer Dunlap placed [Appellant] under arrest for DUI and transported [Appellant] to Lansdale Hospital for a blood test.[3]

On October 7, 2014, [Appellant] filed the present Motion to Suppress. On December 5, 2014, this Court began a bifurcated hearing to decide the motion. The hearing was concluded on March 23, 2015.

Trial Court Order Sur: Suppression, filed 4/16/2015, at 1-2.

_____

[2] The suppression court also spells Officer Richardson's first name "Jeffery" in suppression order, **see** infra.

[3] Appellant's BAC was .18 and the presence of THC (the abbreviation for Tetrahydrocannbinol, the active ingredient in hashish and marijuana) also was detected therein. N.T. Sentencing, 12/10/15, at 5.

Based on the aforementioned testimony, the trial court denied Appellant's pre-trial suppression motion, and after waiving his right to a jury trial, Appellant proceeded to a waiver trial based on stipulated facts on July 10, 2015. The trial court convicted Appellant of the offenses indicated *supra* and sentenced him to an aggregate term of ninety (90) days to five (5) years in prison.[4] This timely, counseled appeal followed, and all Pa.R.A.P. 1925 requirements have been met. In his appellate brief, Appellant raises the following issue for our review:

> Whether the suppression court committed an error of law and/or abused its discretion in denying Appellant['s] [] motion to suppress his arrest where the Commonwealth's evidence failed to establish probable cause for officers to believe that Appellant [] was in violation of 3802 of the Motor Vehicle Code.

Brief for Appellant at 5.

This Court's well-settled standard of review for challenges to the denial of a suppression motion is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court

---

[4] The parties agreed that all of the charges merged for sentencing purposes with Count 5, DUI: Controlled Substances, 75 Pa.C.S.A. § 3802(d)(3). N.T. Sentencing, 12/10/15, at 5.

is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526–27 (Pa.Super. 2015), *reargument denied* (Sept. 30, 2015), *appeal denied*, 135 A.3d 584 (Pa. 2016) (citation omitted) (brackets in original). In addition, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 622 Pa. 126, 79 A.3d 1073, 1087 (2013). Moreover, our standard of review is highly deferential with respect to the suppression court's factual findings and credibility determinations which are within its sole province. *Commonwealth v. Shabezz*, 129 A.3d 529, 532 (Pa.Super. 2015).

Under constitutional jurisprudence, there are three categories of interactions between police and a citizen.

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Fleet*, 114 A.3d 840, 845 (Pa.Super. 2015) (citation omitted).

- 4 -

The relevant inquiry herein is whether Officer Dunlap had probable cause to arrest Appellant for DUI. "Both the United States and Pennsylvania Constitutions protect citizens against unreasonable searches and seizures. U.S. Const. Amend. IV; Pa. Const. Art. I, § 8. To be constitutionally valid, an arrest must be based on probable cause." *Commonwealth v. Smith*, 979 A.2d 913, 916 (Pa.Super. 2009) (citation omitted), *appeal denied,* 993 A.2d 901 (Pa. 2010). Probable cause exists where the facts and circumstances within a police officer's knowledge are based upon reasonably trustworthy information and are sufficient to warrant one of reasonable caution in the belief that the suspect has committed or is committing a crime. In determining whether probable cause exists, this Court applies a totality of the circumstances test. *Commonwealth v. Delvalle*, 74 A.3d 1081, 1085 (Pa.Super. 2013). "The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require *only a probability,* and not a prima facie showing, of criminal activity." *Commonwealth v. Thompson*, 604 Pa. 198, 203, 985 A.2d 928, 931 (2009) (internal quotation marks and citations omitted, emphasis in original).

At the suppression hearing, Officer Beebe testified that as he was making a U-turn to pursue a vehicle with an equipment violation, a second vehicle collided with him and struck his bumper from behind. N.T. Suppression, 12/5/14, at 6. He and his partner, Officer Andrew Benner,

initially approached Appellant, the driver of the second vehicle, to discern whether Appellant had been injured. *Id*. at 7.[5]

Officer Dunlap testified that in his capacity as a police officer with the Montgomery Township Police Department for approximately thirty years, he had been involved in approximately five hundred to six hundred incidents involving an individual under the influence of drugs or alcohol. *Id*. at 21-22. He had training in field sobriety testing and Horizontal Gaze Nystagmus (HGN) testing as well. *Id*. at 23. Upon his arrival at the scene, Officer Dunlap was informed by Officer Benner that he may wish to speak with Appellant as it appeared to Officer Benner Appellant had been drinking. *Id*. at 52, 62. Officer Dunlap approached Appellant to discuss the circumstances surrounding the motor vehicle accident and "immediately detected an odor of alcoholic beverage on his breath when talking to him" and noticed his speech was "a little slurred." *Id*. at 27-28. When Officer Dunlap asked Appellant if he had been drinking, the latter admitted he had and indicated he had "maybe three beers earlier" the last of which he had consumed about forty-five minutes before the accident. *Id*. at 29. Based upon Appellant's admission, Officer Dunlap asked Appellant to perform various field sobriety tests. *Id*.

---

[5] This encounter was captured by the patrol vehicle's camcorder and played for the suppression court. *Id*. at 8, 13.

While Appellant was able to recite the alphabet, he did so "deliberately" and "methodically." When asked to count backward from 69 to 53, Appellant did not follow Officer Dunlap's instructions and instead counted back to 52. *Id*. at 30-31. Officer Dunlap performed three tests as part of the HGN after each of which he detected nystagmus, which indicated to him "there's alcohol involved and possible impairment." *Id*. at 31-35. When Officer Dunlap had Appellant complete the "walk-and-turn-test," he noticed Appellant had trouble maintaining his balance. *Id*. at 35-37. Finally, Officer Dunlap remarked that Appellant had difficulty completing the "one-leg stand test." *Id*. at 38-40. Based upon the entire interaction he had with Appellant, Officer Dunlap opined Appellant was under the influence of alcohol and could not drive safely and placed him under arrest for DUI. *Id*. at 40-41, 61. Officer Dunlap then transported Appellant to Lansdale Hospital so a chemical test could be performed. *Id*. at 40-41.

In support of its finding that Officer Dunlap testified credibly and had probable cause to believe Appellant was driving under the influence of alcohol and to subsequently arrest him, the suppression court reasoned as follows:

> Here, Officer Dunlap spoke with [Appellant] and immediately noticed the odor of alcohol on his breath. By way of [Appellant's] admission, Officer Dunlap learned that [Appellant] had recently consumed alcohol. Officer Dunlap then administered five different field sobriety tests, which assisted him in determining whether [Appellant] was intoxicated. Officer Dunlap observed signs of impairment on four of the five field sobriety tests. Based on his extensive training and experience,

his observations of impairment and [Appellant's] admission, Officer Dunlap determined that [Appellant] was incapable of safely driving due to the influence of alcohol. Subsequently, Officer Dunlap arrested [Appellant] for DUI.

[Appellant] asks this [c]ourt to place particular weight on the observations, or lack thereof, of a police officer who was unavailable to testify at this hearing. In support of this position, [Appellant] submitted the accident report created by Officer Jeffrey Richardson. Officer Richardson's report, which determined the cause of the accident, contains no mention of [Appellant] being intoxicated. After this incident, Officer Richardson retired and cannot be located. Accordingly, Officer Richardson did not testify at the hearing. [Appellant] argues that due to Officer Richardson's absence, this [c]ourt should infer that he would have testified that [Appellant] was not intoxicated. This [c]ourt believes that such an inference has little effect on the inquiry of whether probable cause did or did not exist. Therefore, this [c]ourt finds Officer Dunlap credibly had probable cause to believe that [Appellant] was DUI and the arrest of [Appellant] was lawful.

Trial Court Order Sur: Suppression, filed 3/4/16, at 3.

Appellant maintains that "[w]hile arguably, standing alone, Officer Dunlap's claimed observations could be sufficient to establish probable cause, closer examination of those observations and the conclusions drawn therefrom demonstrates that they are not reliable." Appellant also states it is undisputed that he "was involved in an accident that was caused entirely by the negligence of Montgomery Township rookie officer Beebe, and that Appellant [ ] admitted to drinking three beers earlier in the day." Brief for Appellant at 14. Appellant proceeds to challenge the credibility of Officer Dunlap's observations, viewing them in a light most favorable to him, and making much of the fact that Officer Richardson ultimately determined the motor vehicle accident had not been his fault. *Id*. at 14-18.

Upon our review of the record, we conclude the suppression court's finding that police had probable cause to arrest Appellant is supported by the record and that the totality of the circumstances, including Officer Dunlap's observations viewed in the light of his experience, support its legal conclusions. Officer Dunlap initially approached Appellant to ascertain his condition after a motor vehicle accident, at which time he discerned the odor of alcoholic beverage on his person and observed behavior indicative of one driving under the influence of alcohol. Officer Dunlap confirmed his belief upon performing the aforementioned field sobriety tests which provided him with probable cause subsequently to place Appellant under arrest. Accordingly, Appellant's issue affords him no relief.[6]

_____

[6] Appellant filed with this Court a post-submission communication pursuant to Pa.R.A.P. 2501(b) wherein he argues the United States Supreme Court's recent decision in *Birchfield v. North Dakota*, 136 S.Ct. 2160, 195 L.Ed.2d 560 (filed June 23, 2016) is instructive herein. Therein, three cases were consolidated for argument to determine whether a motorist may be deemed to have consented to submit to a blood test on pain of committing a criminal offense. The Supreme Court ultimately held that while no warrant is required for a police officer to administer a field breathalyzer test to a suspected drunk driver, either a search warrant or a recognized exception thereto is necessary before blood may be drawn for the purpose of chemical testing. However, the *Birchfield* Court reaffirmed the constitutionality of an officer's decision to administer field sobriety tests which, in turn, provide probable cause for the officer to arrest the driver after he or she administers those tests if he or she finds the driver has failed them. In the matter *sub judice*, the basis of Appellant's appeal is not that his consent to a blood test had been coerced by a police officer's warnings provided pursuant to Implied Consent Law, but rather that Officer Dunlap lacked probable cause to arrest him. In fact, Appellant acquiesced at the stipulated bench trial that based

*(Footnote Continued Next Page)*

Judgment of Sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2016

---

*(Footnote Continued)* ───────────

upon the test results, there was "[n]o argument as to his guilt. . . ." N.T. Trial, 7/10/15, at 4.